IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RANCOURT LITTLE MOUNTAIN : 
WOODELL, :
:
              Plaintiff, :     CIVIL ACTION NO. 18-4430
:
  v. :
:
JOHN WETZEL, PA.D.O.C. SECRETARY :
OF CORRECTIONS, et al., :
:
             Defendants. :

## **MEMORANDUM OPINION**

Smith, J.                                                                                           November 14, 2018

      The *pro se* plaintiff, currently incarcerated in a Pennsylvania state correctional institution, has brought this civil action under 42 U.S.C. § 1983 because the defendants (two of which are not identified in the caption of the complaint) violated his constitutional rights when he lost certain property during his transfer between correctional institutions. He also claims that the Department of Corrections has adopted a new policy for processing inmates' mail which violates the First Amendment. The plaintiff has applied for leave to proceed *in forma pauperis*. As discussed below, while the court will allow the plaintiff to proceed *in forma pauperis* in this action, the court will dismiss all claims except for his First Amendment claim regarding the Department of Corrections' new mail policy.

                           **I.**        **ALLEGATIONS AND PROCEDURAL HISTORY**

      The *pro se* plaintiff, Rancourt Little Mountain Woodell ("Woodell"), commenced this action by filing an application for leave to proceed *in forma pauperis* ("IFP Application"), a prisoner trust fund account statement, and a proposed complaint that the clerk of court docketed

on October 10, 2018.[1]  *See* Doc. Nos. 1, 3, 4.  The caption of the proposed complaint identifies only a single defendant, namely John Wetzel ("Wetzel"), the Pennsylvania Secretary of Corrections.  *See* Compl. at ECF p. 3.  Yet, it appears that Woodell also seeks to assert claims against Tammy Ferguson ("Ferguson"), the superintendent of the State Correctional Institution – Phoenix ("SCI–Phoenix"), and the "Pa. Correction Emergency Response Team" ("CERT").[2]  *Id.* at ECF pp. 4-5.

Woodell indicates that he is asserting claims under 42 U.S.C. § 1983 based on the following federal constitutional or statutory rights: "Native American Freedom Religious Act, Racial Profiling, Eighth Amendment, Hate Crime, Custody, Care and Control."  *Id.* at ECF p. 5.  Woodell's claims arise out of his transfer from incarceration at the now-defunct State Correctional Institution – Graterford ("SCI–Graterford") to confinement at SCI–Phoenix on July 14, 2018.  *See id.* at ECF pp. 8-9.

According to the complaint, during the process of transferring inmates from SCI–Graterford to SCI–Phoenix, Ferguson conducted a town hall meeting during which she indicated that (1) no SCI–Graterford officers would be involved in the transition process, (2) the inmates' property would be maintained in compliance with DC-ADM 815, which would consist of one footlocker and two boxes, or four boxes, and (3) the administrative staff would have to approve any legal box exemptions.  *See id.* at ECF p. 8.  Regarding the legal box exemption, Woodell alleges that for each year he was confined at SCI–Graterford (since December 2011), he received

---

[1] Woodell filed the IFP Application and prisoner trust fund account statement separately from the complaint.  *See* Doc. No. 1 at ECF p. 16 (letter from Woodell indicating that clerk of court likely received IFP Application separate from his complaint and U.S. Marshal forms).  Since those documents arrived without an accompanying complaint, the clerk of court initially docketed them with Woodell's other pending civil action in this court, docketed at Civil Action No. 18-1098.  Upon receipt of the complaint in this case, the clerk's office recognized that the IFP Application and prisoner trust fund account statement were supposed to accompany the complaint in this case, so it transferred the documents to the instant civil action number.

[2] It appears that Woodell wants to assert claims against individual members of the team, but he does not know their names.  *See* Compl. at ECF p. 5 (mentioning that he does not know participants' names).

approval from an administrative staff member to have a "legal box exemption" for some of his property. *See id.*

When officials arrived at Woodell's cell (presumably to effect his transfer at SCI–Phoenix), Woodell had his "content" laid out on his cell bed. *See id.* A CERT officer arrived at his cell and asked Woodell why his property was not packed and ready for transfer.[3] *See id.* It appears that Woodell then placed the items in a box that could close, and then the boxes were placed in a laundry cart. *See id.*

After his arrival at SCI–Phoenix, Woodell received his electronics without any damage to them. *See id.* When a CERT officer brought the property cart to Woodell's cell, the footlocker containing his items was upside down, there was white powder on the top of it, and the back bottom of the rim was damaged. *See id.* Woodell pointed out these issues to female and male officers, and they told him that "damage happens," and instructed him that if he was upset about what happened, he should write a grievance. *See id.*

When Woodell finally opened his footlocker, baby powder was spread throughout the inside of it and covered various items. *See id.* There were also two empty bottles on top. *See id.* In addition, apparently a bottle of Nutella was opened, and it spread onto a bunch of Woodell's photographs. *See id.* As to these photographs, Woodell alleges that he "is a one percent minority at [SCI–Graterford], and [is] now currently at [SCI–Phoenix] a member to the Lumbee Tribe of North Carolina." *Id.* The photographs were allegedly of "traditional tribal regalia of family going back to 1970 and present date of ceremony and gatherings." *Id.*

---

[3] Per the complaint, Woodall describes CERT as a team of prison staff that, under the direction of Wetzel and Ferguson, moved his and the other inmates' legal and personal property from SCI–Graterford to SCI–Phoenix. See Compl. at ECF p. 8.

Woodell also had a commissary photo album that he purchased in 2002 located in his footlocker, and he had placed a memorial card, a tribal membership card, and photographs of elders and "regalia" going back to 1950 and 1960 in the photo album. *See id.* He also had a three-ring binder with letters from his uncle that were spiritual in nature.[4] *See id.* Woodell also noted that a pair of eyeglasses that had been wrapped in washcloths and his "spiritual medicine bag" were missing from his footlocker. *See id.*

After Woodell could not locate his glasses and spiritual medicine bag, he "pushed the cell intercom and requested to be moved out of the cell [] to the R.H.U. of Mental Health Cell" because his mind was filled "with anxiety, fog, and pain." *Id.* An officer informed Woodell that no inmate could be moved. *See id.* Although Woodell begged to be moved, no one came to his cell. *See id.* Woodell sat by the cell door for hours until a medication nurse and an officer came to him where he once again asked to be moved to "anywhere." *See id.*

Due to the loss of the spiritual medicine bag, Woodell "felt dishonor, lost from the only possession that were [sic] connected to my identity." *Id.* As Woodell is serving a life sentence and dealing with complications from a severe neurological disorder, he apparently tried to commit suicide by hanging himself with a bed sheet only to have correctional officers find him and save his life. *See id.*

Woodell was transported to a local hospital, and when he was returned to SCI–Phoenix, officials placed him in the mental health unit and gave him a vinyl smock and blanket. *See id.* at ECF p. 9. Officials would not let him use a bare mattress, so he had to lie down on the hard, plastic bed frame, which he asserts is against the mental health policy. *See id.* When a psychiatric review team came to see him, they would not allow him to "explain his issue" and walked away after

---

[4] Woodell alleges that his uncle was a "Native Seer, who has a spiritual gift." Compl. at ECF p. 8.

4

asking if he was fine. *See id.* It was not until "this P.R.T." that Woodell was heard and was issued a mattress. *See id.*

During this time in the mental health unit, the P.R.T. "had no intention[] of . . . assisting [Woodell] to understand the choice made or assistance on how to recover." *Id.* The shift officers did not communicate with him. *See id.* Also, someone told Woodell that no one could brush their teeth or wash their hands, unless the head psychologist ordered it. *See id.*

Eventually, Woodell returned to his cell and attempted to continue unpacking. *See id.* While unpacking, Woodell noticed numerous missing items, which included various books (including spiritual books) he had purchased from an outside vendor. *See id.* Also missing were legal materials, including documents from his underlying state court proceedings and a prior habeas petition filed in the United States District Court for the Middle District of Pennsylvania, docketed at Civil Action No. 3:14-1764. *See id.*; *see also Woodell v. Wenerowitz*, Civ. A. No. 14-1764 (M.D. Pa.).[5] Woodell claims that he is preparing a PCRA and now lacks certain transcripts. *See id.*

Woodell notes that despite being transferred to different facilities four times and being placed in the R.H.U. numerous times, he has never lost legal materials or any of his spiritual items. *See id.* He used a lot of money to purchase some of these items from the commissary, and any grievances related to stolen items were not resolved. *See id.*

As a final set of allegations, Woodell alleges that Wetzel has caused his "in-coming privileged mail" to be "snatched away." *Id.* Woodell references the Department of Corrections'

---

[5] A review of public dockets reflects that the Honorable John E. Jones III dismissed Woodell's petition for a writ of habeas corpus under 28 U.S.C. § 2254 as time-barred on June 26, 2017. *See* Docket, *Woodell v. Wenerowicz*, Civ. A. No. 14-1764 (M.D. Pa.), Doc. Nos. 30, 31. Woodell appealed from Judge Jones's dismissal and the United States Court of Appeals for the Third Circuit denied Woodell's motion for a certificate of appealability in October 2017. *See id.*, Doc. No. 38.

("DOC") new mail policy which requires a majority of the mail sent to inmates to be sent to SMART Communications in St. Petersburg, Florida, before being forwarded to the inmates at their respective institutions. *See id.* The DOC implemented this policy "from a State of Emergency drug interdiction." *Id.* Woodell argues that this policy violates the First Amendment. *See id.* He asserts that his family will not send mail to him now, and he notes that there are concerns that SMART Communications is permitted to destroy correspondence and photographs after photocopying them and forwarding them to their respective locations. *See id.* He also appears to oppose the opening of the mail by a non-SCI–Phoenix employee. *See id.*

Woodell asserts that he has filed grievances of the events outlined in his complaint, but Ferguson has suspended the grievance process at SCI–Phoenix. *See id.* at ECF pp. 10–12. Regarding his injuries, Woodell alleges that he has lost his personal items, he has suffered from emotional distress, and he has been subjected to pain and suffering. *See id.* at ECF p. 7. As for his requested relief, while unclear, it appears that Woodell seeks $250,000 in damages and the replacement of his spiritual books, medicine bag, and his Nutella. *See id.*

## II. DISCUSSION

### A. The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files

a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131-32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application and the prisoner trust fund account statement, it appears that Woodell is unable to pay the costs of suit. Therefore, the court will grant him leave to proceed *in forma pauperis*.[6]

### B. Standard of Review of Complaints Under 28 U.S.C. § 1915(e)(2)(B)

Because the court has granted Woodell leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that

---

[6] As a prisoner, Woodell is obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

"[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal-- **(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious, "[a] court that considers whether an action is malicious must, in accordance with the definition of the term 'malicious,' engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant." *Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted). In addressing whether a *pro se* plaintiff's complaint is frivolous or fails to state a claim, the court

8

must liberally construe the allegations set forth in the complaint. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

### C. Analysis

Other than a reference to the "Native American Freedom Religious Act," Woodell brings his claims against the named defendants under 42 U.S.C. § 1983. To succeed on claims under section 1983,

> a plaintiff must show a deprivation of a right secured by the Constitution and laws of the United States, and he must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 47, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The color-of-state-law requirement is a threshold issue; "there is no liability under § 1983 for those not acting under color of law." *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). To show that the defendant acted under color of state law, a litigant must establish that the defendant is a "state actor" under the Fourteenth Amendment. *Benn v. Universal Health System, Inc.*, 371 F.3d 165, 169 n. 1 (3d Cir. 2004).

*Bailey v. Harleysville Nat'l Bank & Trust*, 188 F. App'x 66, 67 (3d Cir. 2006) (per curiam). As discussed below, Woodell has failed to state a claim for a violation of the "Native American Freedom Religious Act," and he has failed to state a plausible claim for a violation of section 1983 except for his First Amendment claim regarding the DOC's new mail policy.

#### 1. Claims Under the "Native American Freedom Religious Act"

Woodell alleges that the defendants violated his rights under the "Native American Freedom Religious Act." *See* Compl. at ECF p. 5. There does not appear to be such an Act, so the court has construed this remark to reference the American Indian Religious Freedom Act. Congress passed this Act

> to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian,

9

> Eskimo, Aleut, and Native Hawaiians, including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites.

42 U.S.C. § 1996. This Act, however, did not create a private "cause of action or any judicially enforceable individual rights." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 455 (1988). As such, Woodell has not stated a plausible claim under this Act.

### 2. Shutting Down the Grievance System

Woodell also suggests that Superintendent Ferguson intentionally suspended the grievance system at SCI–Phoenix. *See* Compl. at ECF pp. 10–12. These allegations, however, do not state a claim, because "prison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam) (citation omitted); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam) ("The District Court correctly noted that an inmate has no constitutional right to a grievance procedure."). Accordingly, although shutting down the grievance system would affect the analysis about whether Woodell properly exhausted his claims as required by the Prison Litigation Reform Act, it does not provide an independent basis for a constitutional claim.

### 3. Eighth Amendment Claims

The loss of Woodell's property does not provide a basis for a claim under the Eighth Amendment. Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities"; and, second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-condition cases . . . is one of deliberate indifference to inmate health or safety." *Farmer v.*

10

*Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). While the court does not condone the intentional destruction of an inmate's property, the destruction of property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Payne v. Duncan*, Civ. No. 3:15-cv-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."); *Dean v. Folino*, Civ. A. No. 11-525, 2011 WL 4527352, at *2–3 (W.D. Pa. Aug. 22, 2011) (concluding that inmate's claim that "the taking and destruction of his property constituted unusual punishment and . . . violat[ed] . . . his Eighth Amendment rights" was "without merit"), *report and recommendation adopted*, 2011 WL 4502869 (W.D. Pa. Sept. 28, 2011).

### 4. Fourteenth Amendment Claims

Although unclear, it appears that Woodell is also pursuing due process and equal protection claims under the Fourteenth Amendment based on the loss or damage to his property. To the extent that Woodell is asserting a due process claim, there is no plausible basis for such a claim because Pennsylvania law provides him with an adequate state remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available"); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act, 42 Pa. C.S. §§ 8541–8546, provides an adequate remedy for a willful deprivation of property claim). Therefore, Woodell has not stated a basis for a due process claim.

As for an equal protection claim, Woodell possibly suggests that the defendants violated his equal protection rights by causing the loss of his property. It is possible that he is invoking the "'class of one' theory," which provides that a plaintiff "states a claim for violation of the Equal Protection Clause when he 'alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). To the extent that Woodell is asserting a "class of one" claim, he must include sufficient allegations showing that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Id.* Nowhere in the complaint does Woodell does he set forth facts plausibly suggesting that the defendants treated him differently from similarly situated inmates. Accordingly, Woodell has not set forth a plausible claim for an equal protection violation at this time.

### 5. First Amendment Claims

The court has interpreted Woodell's final claims as (1) a claim that the defendants violated his First Amendment rights because they denied him access to the courts, and (2) a claim that the DOC's new mail policy violates the First Amendment. Concerning a possible access to the courts claim, prisoners have a constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). In addition, an inmate's right "to send and receive legal mail is uncontroverted and implicates both First and Sixth Amendment concerns, through the right to petition the government and the right of access to the courts." *Proudfoot v. Williams*, 803 F. Supp. 1048, 1052 (E.D. Pa. 1992). However, to prevail on a denial of access to the courts claim, "a prisoner must show actual injury to a specific legal claim which sought to

vindicate 'basic constitutional rights.'" *Williams v. Price*, 25 F. Supp. 2d 605, 616 (W.D. Pa. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 354 (1996)); *see also Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) ("A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." (citing *Lewis*, 518 U.S. at 352–53)). In other words, a prisoner claiming that a defendant denied him access to the courts must allege an injury traceable to the conditions of which the prisoner complains. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (affirming district court's dismissal of *pro se* prisoner's denial of access to courts claims where prisoner failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that the prisoner lost a "nonfrivolous" and "arguable" claim because a defendant denied the prisoner access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, "[t]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.*

Here, Woodell suggests that the defendants' actions deprived him of transcripts and documents from his federal habeas proceeding, but he does not describe any injury he suffered because of this conduct. Therefore, the court will dismiss Woodell's access to the courts claim.

Woodell's last claim appears to suggest that the DOC's new mail policy violates the First Amendment. He states that his "family will not forward any mailings to the PA.D.O.C." Compl. at ECF p. 9. He also indicates that SMART Communications, the third party responsible for processing inmate mail, is "allowed to destroy correspondence and photographs after photocopying, forwarding to SCI-PHX." *Id.* Woodell argues that the DOC enacted the policy in response to drugs being found in various facilities, but that since the policy went into effect, "there ha[ve] been numerous . . . drug related incidents not related to any mail." *Id.*

Prisoners have a First Amendment right to use the mail. *See Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) (explaining that state prisoners do not lose First Amendment right to use mail simply because they are incarcerated). Thus, "[r]estrictions on prisoners' mail are justified only if they 'further[] one or more of the substantial governmental interests of security, order and rehabilitation …[and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)) (alterations except for first alteration in original). Given Woodell's allegations, the court will permit Woodell to proceed on his First Amendment claim regarding the DOC's mail policy at this time.

## III. CONCLUSION

For the foregoing reasons, although the court will grant Woodell leave to proceed *in forma pauperis*, the court will dismiss his claims except for the section 1983 First Amendment claim regarding the DOC's new policy for processing inmates' mail. As it is possible that Woodell could amend his access to the courts claim, the court will provide him with an opportunity to file an amended complaint in accordance with the court's separately filed order.[7] If Woodell fails to timely file an amended complaint, the court will direct service of his initial complaint so that he can proceed on his First Amendment claim regarding the DOC's new mail policy.[8]

---

[7] If Woodell files an amended complaint, he must include all named defendants both in the caption **and** in the body of the complaint.

[8] A district court should generally provide a pro se plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.