IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANCOURT LITTLE MOUNTAIN WOODELL, | : | |
| | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 18-4430 |
| | : | |
| v. | : | |
| | : | |
| PA.D.O.C. SECRETARY OF CORRECTIONS, JOHN WETZEL, SCI-PHOENIX SUPERINTENDENT, CORRECTIONS EMERGENCY RESPONSE TEAM JANE DOE # ONE or JOHN DOE # TWO, SCI-PHOENIX MAILROOM INSPECTOR NO. 2, and JANE DOE # THERE OR JOHN DOE # FOUR, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM OPINION</u>

Smith, J.                                                                                         June 1, 2020

The *pro se* plaintiff, currently incarcerated in a Pennsylvania state correctional institution,

has filed an amended complaint raising constitutional claims under 42 U.S.C. § 1983 because the

defendants allegedly violated his constitutional rights when they defaced or destroyed certain items

of his property during his transfer between two correctional institutions. He also claims that the

Department of Corrections' new mail policy, which requires, *inter alia*, a third-party to process all

non-privileged incoming mail, violates the First Amendment to the United States Constitution.

The secretary of the Commonwealth of Pennsylvania Department of Corrections and the

superintendent of the state prison where the plaintiff is currently incarcerated have moved to

dismiss all claims against them in the amended complaint. In addition, the court has screened the

amended complaint under 28 U.S.C. § 1915(e)(2). As discussed in more detail below, the court

will dismiss the amended complaint in its entirety because the plaintiff has failed to state a plausible claim against any defendant and the court lacks jurisdiction over any official capacity claims against the secretary and superintendent. Further, as the court finds that providing the plaintiff with leave to amend would be futile, the court will dismiss the amended complaint with prejudice.

## I.   ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Rancourt Little Mountain Woodell ("Woodell"), commenced this action by filing an application for leave to proceed *in forma pauperis* ("IFP Application"), a prisoner trust fund account statement, and a proposed complaint that the clerk of court docketed on October 10, 2018.[1] *See* Doc. Nos. 1, 3, 4. The caption of the proposed complaint identified only a single defendant, namely John Wetzel ("Wetzel"), the Secretary of the Commonwealth of Pennsylvania's Department of Corrections. *See* Compl. at ECF p. 3. Yet, it appeared that Woodell also sought to assert claims against Tammy Ferguson ("Ferguson"), the superintendent of the State Correctional Institution – Phoenix ("SCI–Phoenix"), and the "Pa. Correction Emergency Response Team" ("CERT").[2] *Id.* at ECF pp. 4-5.

In the complaint, Woodell indicated that he was asserting claims under 42 U.S.C. § 1983 based on the following federal constitutional or statutory rights: "Native American Freedom Religious Act, Racial Profiling, Eighth Amendment, Hate Crime, Custody, Care and Control." *Id.* at ECF p. 5. Woodell's claims arose out of his transfer from incarceration at the now-defunct State

---

[1] Woodell filed the IFP Application and prisoner trust fund account statement separately from the complaint. *See* Doc. No. 1 at ECF p. 16 (letter from Woodell indicating that clerk of court likely received IFP Application separate from his complaint and U.S. Marshal forms). Since those documents arrived without an accompanying complaint, the clerk of court initially docketed them with Woodell's other pending civil action in this court, docketed at Civil Action No. 18-1098. Upon receipt of the complaint in this case, the clerk's office recognized that the IFP Application and prisoner trust fund account statement were supposed to accompany the complaint in this case, so they transferred the documents to the instant civil action number.

[2] It appeared that Woodell wanted to assert claims against individual members of the team, but he did not know their names. *See* Compl. at ECF p. 5 (mentioning that he did not know participants' names).

Correctional Institution – Graterford ("SCI–Graterford") to confinement at SCI–Phoenix on July 14, 2018. *See id.* at ECF pp. 8-9. During that transfer, Woodell alleged that prison officials damaged or caused him to lose certain items of personal property. *See id.* at ECF pp. 8–9.

After screening the complaint under 28 U.S.C. § 1915(e)(2), the court entered a memorandum opinion and order on November 14, 2018, which dismissed the complaint without prejudice for the failure to state a claim, except for Woodell's First Amendment claim regarding the Department of Corrections' new inmate mail policy. *See id.* at 14; Order at 2, Doc. No. 6. The court provided Woodell with leave to file an amended complaint within 30 days of the court's order. *See* Order at 2. Woodell filed an amended complaint, which the clerk of court docketed on December 13, 2018.[3] Doc. No. 8.

In the amended complaint, Woodell identifies the following as defendants in the caption: (1) Wetzel; (2) Ferguson; (3) Jane Doe #1, Corrections Emergency Response Team; (4) John Doe #2, Corrections Emergency Response Team; (5) Jane Doe #3, SCI–Phoenix Mailroom Inspector; and (6) John Doe #4, SCI–Phoenix Mailroom Inspector.[4] *See* Am. Compl. at ECF p. 1. Although the amended complaint is difficult to understand, it nonetheless appears that Woodell is asserting a "violation of the First Amendment access to the court, freedom of expression and thought[,] drug interdiction law" due to the implementation of the Pennsylvania Department of Corrections' Policy DC-ADM 803 dealing with inmate mail. *See id.* at ECF p. 2.

Woodell alleges that Wetzel issued a state of emergency on August 29, 2018, after it was reported that approximately 50 staff members became ill due to 11 incidents of alleged drug

---

[3] Woodell submitted a motion for enlargement of time to file an amended complaint, which the clerk of court docketed on December 10, 2018. Doc. No. 7. As Woodell filed the amended complaint in a timely manner, the court denied the motion as moot. *See* Order at 1, Doc. No. 9.

[4] As discussed later in this opinion, Woodell also named Smart Communication ("Smart") as a defendant. *See* Am. Compl. at ECF p. 6.

exposure.[5] *See id.* at ECF pp. 2, 4. According to Woodell, Wetzel based the state of emergency on mass drug overdoses and drugs having entered the Department of Corrections (the "Department"). *Id.* at ECF p. 4. Woodell contests that Wetzel had any statistics to prove the "continuous cause" of incoming inmate mail for illegal drugs entering the state correctional institutions. *See id.* at ECF p. 3.

Wetzel "overturn[ed]" the constitutional rights of the state inmates by placing a drug interdiction on the incoming mail. *See id.* at ECF p. 4. He hired Smart to "scan, place on their database, and destroy all in-coming [sic] legal mail, and privilege [sic] mail." *Id.* Woodell believes that this gave Smart "the Power of Attorney with [sic] Plaintiffs [sic] mail rights." *Id.* Also, the fictitious defendants who review the incoming mail to determine whether it is legal mail, "commit Governmental Interference to [Woodell's] Access to the Courts and in-coming [sic] legal mail those return address with Esquire and Attorney General involved in litigation." *Id.*

By directing that legal mail go to Smart, Woodell believes that Wetzel and Smart are committing criminal acts warranting penalties in the nature of fines and imprisonment for up to five years. *Id.* Wetzel also "gave the State Correctional Institutions the Power of Attorney to photocopy legal mail and destroy [it in] up to . . . seven days." *Id.* He also "has Correctional Officers dress in contaminated suits, and face mask[s]" to review the mail. *Id.* The officers review the mail "[i]nside a window room, [where someone] stand[s] outside, video[] and auto record[s] the process, [and] photocop[ies] the original." *Id.*

According to Woodell, Wetzel also appointed Ferguson to assemble a CERT team for transitioning to SCI–Phoenix. *See id.* at ECF p. 3. Officers Jane Doe and John Doe handled Woodell's legal material, photographs, and letters outside of his presence, and they vandalized "all

---

[5] Woodell alleges that an incident also occurred at a correctional facility in Ohio, due to overdoses from Fentanyl. *See* Am. Compl. at ECF p. 4.

properties," which included causing his trial transcripts to go missing despite his need to file a

post-conviction petition.[6] *See id.* He claims that he had a certificate of appealability denied on

September 27, 2018, due to a time bar as he has a "hampered ability to understand law," is "unable

to meet even his most basic needs," and had "relied on other inmates and Correctional Officers to

care for him since he had become unable to reason [the] majority of the time." *Id.* Woodell claims

that the destruction of his legal materials violated the Fourth Amendment, and this also

complicated his ability to file a

> P.C.R.A. review of record on testimony on his seizure and physical condition . . ., State Police when taken into custody, interrogation, which hampered his ability to understand the proceedings and assist his counsel in preparing a defense to the Comm[onwealth's] accusations in his criminal conviction and sentence to life imprisonment."[7]

*Id.*

> Regarding his other damaged or destroyed items, Woodell alleges:

> Plaintiffs [sic] damage and destruction of letters, photos and teachings on his nationality, where letters of spiritual guidance, and strong traditions, with over fifteen years of on [sic] Rehabilitative and Religious beliefs, were the originals that were of one copy and not replaced. Plain[tiff's] family will not send no mail to to [sic] him through SMART, because of St. Petersburg, Florida not Plaintiffs [sic] residence. Also the permission from Defendant Wetzel gave SMART the Power of Attorney to photocopy letters, photographs, to scan, and keep in their database and destroy original legal mail, privileged mail, access to the media, and other outside correspondence to violate the Plaintiffs [sic] and all Prisoners [sic] First Amendment Right of Freedom of Expression, and Thought while profitting [sic] on this process and destroy[ing] all incoming mail.

*Id.* at ECF p. 5.

For a final set of allegations, Woodell claims he was taken to Temple University's neuro-

science unit in July 2015 due to his medical issues. *See id.* He claims that he was diagnosed with

---

[6] Woodell's state court matter is docketed at CP-40-CR-2635-2001 (Luzerne Cty. Ct. Com. Pl.).
[7] Woodell alleges that his trial counsel witnessed a seizure during a discovery conference, and counsel was otherwise aware of seizure incidents. *See* Am. Comp. at ECF p. 3. Woodell believes "[i]f a MRI were [sic] done, it would have shown the Right Temporal Lobe's Hippocampus shrinking and need for a Specialist evaluation." *Id.*

complex seizures on August 3, 2015, and he had a right temporal lobectomy. *See id.* Woodell asserts that this diagnosis supports his claim that he was denied his right to a fair trial, due process, and equal protection of the law and, as such, he is entitled to a new trial. *See id.*

> Concerning his injuries, Woodell alleges that he suffered the following injuries:
>
> Confidentiality of explicit policy of the addresse[e] inmate plaintiff interferes with protected communications[,] access to the courts, right to freedom of speech, expression and thought incoming legal mail, pivilege [sic] mail, being photocopied, access to the media outside communication of family, to spiritual beliefs teachings, and photographs. Physical and mental distress. Governmental interference.

*Id.* at ECF p. 7. Regarding his requested relief, Woodell seeks:

> Inmate injunctive relief on incoming legal mail, access to the courts, previous incoming legal mail orginals [sic] and incoming legal mail to SMART Communications Defendants, injunctive relief on privilege [sic] mail. Direct incoming legal mail and incoming mailings to plaintiffs [sic] place of residence. In the amount of [$]250,000 and cost of legal fees for loss and damages.

*Id.*

On January 9, 2019, Ferguson and Wetzel filed a motion to stay proceedings. Doc. No. 14. The motion pointed out that on October 3, 2018, the Department significantly changed their inmate mail and incoming publications policy (DC-ADM 803), "in response to escalating drug problems in Pennsylvania's state prisons." Corrections' Defs.' Mot. to Stay Proceedings at 1, Doc. No. 14. Apparently, challenges to this policy were filed (and then consolidated) in the United States District Court for the Middle District of Pennsylvania. *Id.* at 1–2 (citing *Hayes v. Wetzel, et al.*, Civ. A. No. 1:18-2099-JEJ-EBC (M.D. Pa.) and *Pa. Institutional Law Project, et al. v. Wetzel, et al.*, Civ. A. No. 1:18-2100-JEJ-EBC (M.D. Pa.)). As these cases were proceeding in the Middle District, the defendants, "with the knowledge and approval of [the Honorable John E. Jones, III]," requested that the court stay this case to allow the counseled cases challenging the policy to proceed. *Id.* at 2.

Woodell filed a brief in opposition to the motion to stay that the clerk of court docketed on January 24, 2019. Doc. No. 15. This court held an on-the-record telephone conference with Woodell and counsel on April 4, 2019. During the conference, counsel for the defendants indicated that the parties in the Middle District cases settled, and the agreed-upon changes to the mail policy were to become effective no later than April 5, 2019.[8] The parties also agreed that Woodell would dismiss without prejudice his claim for injunctive relief based on his claim that the prior policy (DC-ADM 803) violated his First Amendment rights.[9] The following day, the court entered an order pursuant to the parties' agreement: the order dismissed without prejudice Woodell's claim for injunctive relief based on his assertion that DC-ADM 803 violated his First Amendment rights and denied the motion to stay as moot. Order at 1, Doc. No. 18.

Two days after the telephone conference, Woodell sent a letter to the court where he appears to complain about the new policy. Doc. No. 19. He asserts that the policy is a "clear act by Defendants to drag out [his] proceedings." *Id.* He appears to raise an issue with defense counsel not including his bar license number on his correspondence, and with his belief that the new policy would allow corrections staff to view privileged materials. *Id.* at ECF p. 2.

The defendants filed a motion to dismiss the amended complaint on April 17, 2019. Doc. No. 22. Woodell filed a "Motion to Oppose Settlement Agreement," which the clerk of court docketed on May 9, 2019. Doc. No. 23. Woodell then filed a response to the motion to dismiss

---

[8] It appears that Judge Jones approved the settlement agreement on March 25, 2019. *See* Order, *Pa. Institutional Law Project, et al. v. Wetzel, et al.*, Civ. A. No. 1:18-2100-JEJ-EBC (M.D. Pa.), Doc. No. 93. Although Woodell indicated during the conference that he had received a disseminated summary of the changes to the mail policy per the settlement agreement, defense counsel represented that he would provide Woodell with a copy of the settlement agreement. It appears that defense counsel satisfied his obligation.

[9] With regard to privileged mail, and to the extent it was ever sent to Smart, the new policy regarding privileged mail would render moot any prior claim for injunctive relief pertaining to privileged mail going to Smart for processing. *See, e.g.*, *Brock v. Corrs. Emergency Response Team*, Civ. A. No. 18-3814, 2020 WL 668271, at *5 (E.D. Pa. Feb. 10, 2020) (agreeing with Wetzel and Ferguson's argument that plaintiff's claims for injunctive relief under the First and Sixth Amendments was moot in light of revised policy entered on April 6, 2019).

that the clerk of court docketed on May 29, 2019. Doc. No. 24. He later filed a "Motion for Leave to Expand the Record, Preliminary Injunction and/or Judicial Notice, Pennsylvania Rules of Civil Procedure, Rule 7 in General" that the clerk of court docketed on June 7, 2019. Doc. No. 25. Woodell filed another motion for leave to expand the record that the clerk of court docketed on December 11, 2019. Doc. No. 26.

## II.    DISCUSSION

### A.    <u>Standards of Review</u>

### 1.    Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation omitted). "In

ruling on a 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations." *Bright v. Westmoreland Cty.*, 380 F.3d 729, 735 (3d Cir. 2004) (citation and internal quotation marks omitted). Ultimately, a complaint must contain facts sufficient to nudge any claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 2.    Review Under 28 U.S.C. § 1915(e)(2)

Because the court has granted Woodell leave to proceed *in forma pauperis*, the court must examine whether the amended complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted). In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

## B.   Analysis

### 1.   Wetzel and Ferguson's Motion to Dismiss

In the motion to dismiss, Wetzel and Ferguson (collectively, the "moving defendants") argue that (1) the court should dismiss Woodell's First Amendment freedom of expression claim because processing mail by a third-party does not restrict his freedom of expression; (2) they are entitled to qualified immunity on Woodell's First Amendment confidentiality claim because it was not clearly established that the moving defendants could not contract with a third-party to process incoming non-privileged inmate mail; (3) the court should dismiss Woodell's access to courts claim because he did not suffer any actual injury to a specific legal claim that sought to vindicate his basic constitutional rights; (4) the court should dismiss any possible Fourteenth Amendment

claim (relating to any loss of property) because Pennsylvania law provides Woodell with an adequate state remedy; (5) the court should dismiss any Eighth Amendment claim because property loss does not constitute an Eighth Amendment violation; and (6) the court should dismiss any Fourth Amendment claim because Woodell does not have a reasonable expectation of privacy in his mail or prison cell. Defs.' Br. in Supp. of Mot. to Dismiss ("Defs.' Br.") at 6–18, Doc. No. 22. The court will address each argument in turn, albeit not in the precise order referenced by the moving defendants.

a.   Woodell's First Amendment Access to the Courts Claim

Woodell has again asserted an access to the courts claim in his amended complaint. As the court previously explained in screening the original complaint, prisoners have a constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). In addition, an inmate's right "to send and receive legal mail is uncontroverted and implicates both First and Sixth Amendment concerns, through the right to petition the government and the right of access to the courts." *Proudfoot v. Williams*, 803 F. Supp. 1048, 1052 (E.D. Pa. 1992). However, to prevail on a denial of access to the courts claim, "a prisoner must show actual injury to a specific legal claim which sought to vindicate 'basic constitutional rights.'" *Williams v. Price*, 25 F. Supp. 2d 605, 616 (W.D. Pa. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 354 (1996)); *see also Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) ("A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." (citing *Lewis*, 518 U.S. at 352–53)). In other words, a prisoner claiming that a defendant denied him access to the courts must allege an injury traceable to the conditions of which the prisoner complains. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming district court's dismissal of *pro se* prisoner's denial of access to courts claims where prisoner failed

to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that the prisoner lost a "nonfrivolous" and "arguable" claim because a defendant denied the prisoner access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, "[t]he underlying cause of action . . . is an element that must be described in the complaint." *Id.*

Here, Woodell indicates in the amended complaint that during the transition from SCI–Graterford to SCI–Phoenix, CERT team members handled his legal materials outside of his presence. *See* Am. Compl. at ECF p. 3. He claims that the CERT team members vandalized his property, "with trial transcripts missing as [he] currently [need[ed] to file a Post-Conviction on Com. -v- Woodell, case no. 2635-01, being denied certificate of appealability on September 27, 2018 on time-bar due to [his] hampered ability to understand law." *Id.* He goes on to state that the alleged destruction of his legal materials "gave complications to file P.C.R.A. review of record on testimony on the seizure and physical condition of the Plaintiff." *Id.*

In the moving defendants' brief in support of their motion to dismiss, they point out that Woodell's underlying state court criminal matter is docketed at No. CP-40-CR-2635-2001 in the Court of Common Pleas of Luzerne County. *See* Defs.' Br. at 15 and Ex. E. They note that despite the fact that Woodell alleges that he needed to file a Post Conviction Relief Act ("PCRA") petition in that case, there has been no docket activity in the matter since August 29, 2012.[10] *See id.*

---

[10] The court takes judicial notice of these docket sheets insofar as they are public state court records. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 982 F.2d 1192, 1197 (3d Cir. 1993) (explaining that matters of public record district court may consider when resolving motion to dismiss "include criminal case dispositions such as convictions or mistrials"); *see also Donahue v. Dauphin Cty.*, Civ. A. No. 1:17-cv-1084, 2017 WL 3405112, at *1 n.1 (M.D. Pa. June 27, 2017) ("This publicly available state criminal docket, available online . . ., is a public record of which the Court may take judicial notice in considering dismissal for failure to state a claim." (citations omitted)); *Pearson v. Krasley*, Civ. A. No. 16-66, 2017 WL 2021061, at *1 (E.D. Pa. May 11, 2017) ("A court may also consider public records such as criminal dockets.").

The court notes that significantly after the date the moving defendants filed their motion to dismiss and supporting brief, it appears that Woodell filed a PCRA petition that the Court of Common Pleas of Luzerne County docketed on August 15, 2019. *See* Docket, *Commonwealth v. Rancourt Woodell*, No. CP-40-CR-2635-2001 (Luzerne

With regard to this state court action, the moving defendants are correct that Woodell has not alleged a plausible claim for lack of access to the courts with respect to his state court action. Woodell does not allege any negative result in the state court action (including with the filing of a PCRA petition) caused by the alleged deprivation of his legal materials such as some transcripts. In fact, as the docket demonstrates, Woodell was able to file a PCRA petition in August 2019, which is still pending before the Court of Common Pleas (albeit possibly on the path to dismissal).[11] The alleged deprivation of some of Woodell's legal materials, without more, is insufficient to state a plausible claim for a constitutional violation of the right to access the courts. *See Monroe v. Beard*, 536 F.3d 198, 206 (3d Cir. 2008) (explaining that "the plaintiffs' claim[ in their initial pleadings, which] rested solely on the ground that the defendants confiscated their legal materials . . . on its face, was insufficient to state a claim" for denial of access to courts). Woodell has also "not alleged with any specificty how the absence of the destroyed documents was material to his success [in any state post-conviction proceeding] especially in consideration of the stringent legal standards that govern post-conviction challenges." *Thompson v. Ferguson*, Civ. A. No. 19-CV-3455, 2019 WL 4858270, at *5 (E.D. Pa. Oct. 2, 2019) (citing 42 Pa. C.S. § 9545(b)). Further, to the extent that Woodell is possibly attempting to assert that he lost the opportunity to pursue a PCRA petition in the Court of Common Pleas, he has identified no facts to demonstrate that any claims are not frivolous. *See Monroe*, 536 F.3d at 205 (explaining that "[w]here prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous'

---

Cty. Ct. Com. Pl.), *available at* ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-40-CR-0002635-2001&dnh=RLuoGEIkjpN92TaPItxc7Q%3d%3d. The last activity in that case is the filing of a notice of intent to dismiss the PCRA petition pursuant to Rule 907 of the Pennsylvania Rules of Civil Procedure on January 14, 2020. *Id.*

[11] As an additional note, Woodell appears to assert that his post-conviction claims are based on his diagnosis of complex seizures on August 3, 2015. *See* Am. Compl. at 3. It would appear that any claim based on this "new" evidence would be patently untimely. *See* 42 Pa. C.S. § 9545(b) (setting forth time for filing PCRA petitions).

or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit" (quoting *Christopher*, 536 U.S. at 415).

As a final note on this claim, Woodell referenced a denial of a certificate of appealability on September 27, 2018, *see* Am. Compl. at 3, which would not have occurred (and did not occur) in his state court action. In his response to the motion to dismiss, he appears to have elaborated on this by pointing out that the defendants destroyed and lost his 'legal documents, trial transcripts, in-camera sealed document, sentencing hearing transcript, and ***Habeas Corpus 2254 Petition***." Resp. to Defs.' Mot. to Dismiss ("Pl.'s Resp.") at 9 (emphasis added), Doc. No. 24. He then appears to point out that he was not alluding to his state court criminal action in the amended complaint (despite his explicit reference to the docket number); instead, he was identifying a federal court habeas petition docketed at Civil Action No. 3:14-CV-1754 in the United States District Court for the Middle District of Pennsylvania. *See id.* at 9 and Ex. B.

Nonetheless, even if Woodell was referring to this federal habeas action in his amended complaint, the amended complaint still suffers from the same deficiencies the court just identified to any access to the courts claim pertaining to the state court action. Simply put, Woodell fails to allege any actual injury. In fact, as shown by the docket in that case, Woodell had appealed from the denial of his habeas corpus petition on July 12, 2017. *Woodell v. Wenerowicz, et al.*, Civ. A. No. 3:14-CV-1754 (M.D. Pa.) ("*Woodell*"), Doc. No. 32. While the matter was on appeal, Woodell filed a motion for a certificate of appealability. *Woodell*, Doc. No. 35. The Third Circuit denied Woodell's request for a certificate of appealability on September 21, 2017, *Woodell*, Doc. No. 38, and later denied his petition for an *en banc* and panel rehearing. *Woodell*, Doc. Nos. 36, 37. The

Middle District then entered an order denying Woodell's motion for a certificate of appealability in light of the Third Circuit's decision. *Woodell*, Doc. No. 37.

On April 25, 2019, Woodell filed a motion to vacate under Rule 60(b)(6) of the Federal Rules of Civil Procedure. *Woodell*, Doc. No. 39. His motion seemingly related entirely on his medical issues (particularly his seizure episodes) constituting newly discovered evidence justifying relief. *See id.* On July 22, 2019, the Middle District denied the Rule 60(b)(6) motion, explaining that, *inter alia*, "the evidence of [Woodell's] medical infirmities based on his seizure disorder is not newly discovered in that . . . it has previously been submitted . . . and considered by this Court." Order at 2, *Woodell*, Doc. No. 41.

Woodell does not allege that the damaged or lost legal materials affected his ability to file the Rule 60(b) motion or that the court denied the motion in part due to the impact of his inability to access these materials. He has not alleged with specificity how the missing documents were material to the success of this Rule 60(b) motion. In addition, as shown by the order denying the motion, the motion was frivolous. Accordingly, Woodell has failed to sufficiently allege a denial of access to the courts claim with respect to this federal habeas corpus action as well.

### b.      Woodell's Other First Amendment Claims

Woodell attempts to assert claims that the defendants violated his First Amendment Freedom of Expression and right to confidentiality. *See* Am. Compl. at ECF p. 2. While somewhat unclear, he appears to assert that the Department's mail policy in which it uses Smart to process, copy/scan, occasionally destroy, and transmit prisoner mail violates the First Amendment.

"In a prison context, an inmate does not retain those First Amendment rights that are inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 129 (1977) (citation

and internal quotation marks omitted). Prisoners have a First Amendment right to use the mail. *See Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) (explaining that state prisoners do not lose First Amendment right to use mail simply because they are incarcerated); *see also Bieregu v. Reno*, 59 F.3d 1445, 1551 (3d Cir. 1995) ("Clearly then, prisoners do not forfeit their First Amendment rights to use of the mails."), *overruled on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996).

To determine whether the Department's mail policy violates Woodell's First Amendment rights, the court must analyze whether the mail policy "is reasonably related to legitimate penological interests."[12] *Turner v. Safley*, 482 U.S. 78, 89 (1987). This analysis "presupposes 'that the plaintiff inmate has demonstrated that a constitutionally protected interest is at stake.'"[13] *Jones*, 461 F.3d at 358 (quoting *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc)). Under *Turner*, the court examines four factors "in determining the reasonableness of the regulation at issue": (1) whether there is "a valid, rational connection between the prison regulation and the legitimate

---

[12] The Court expressly rejected an "inflexible strict scrutiny analysis" for these types of prison regulations because it

> would seriously hamper [prison officials'] ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decisionmaking process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration.

*Turner*, 482 U.S. at 89 (citation and internal quotation marks omitted).

[13] With regard to this constitutionally protected interest, the court acknowledges that

> [a] state pattern and practice, or, as is the case here, explicit policy, of opening legal mail outside the presence of the addressee inmate interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech. The practice deprives the expression of confidentiality and chills the inmates' protected expression, regardless of the state's good-faith protestations that it does not, and will not, read the content of the communications. This is so because the only way to ensure that mail is not read when opened … is to require that it be done in the presence of the inmate to whom it is addressed. [*Bieregu*, 59 F.3d at 1456 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 575 (1974)), *overruled on other grounds by Lewis v. Casey*, 518, U.S. 343 (1996)].

*Jones*, 461 F.3d at 359.

16

governmental interest put forward to justify it[;]" (2) "whether there are alternative means of exercising the right that remain open to prison inmates[;]" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[;]" and (4) "the absence of ready alternatives." 482 U.S. at 90–91.

Concerning the first factor here, the court recognizes that "preventing the introduction of contraband into the prison is . . . a legitimate penological interest." *Guyer v. Beard*, 907 F.2d 1424, 1428–29 (3d Cir. 1990) (citation omitted). Nonetheless, "'a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational' or to demonstrate that it 'represents an exaggerated response to [the asserted] objectives.'" *Jones*, 461 F.3d at 360 (quoting *Turner*, 482 U.S. at 89–90). "Thus, 'a rational nexus between a regulation and a legitimate penological interest is essential to its validity.'" *Id.* (quoting *DeHart*, 227 F.3d at 53).

The moving defendants acknowledge that while Woodell "bears the ultimate burden of showing that the Department's new mail policy is unconstitutional, it is the Department Officials' burden to demonstrate that a rational connection exists between the policy and a legitimate penological interest." Defs.' Br. at 9 (citing *Monroe*, 536 F.3d at 207). Also, while the court must "accord substantial deference to their professional judgment, the defendant administrators' evidence must amount to more than a conclusory assertion." *Monroe*, 536 F.3d at 207 (internal citation and quotation marks omitted).

Moreover,

[w]hile the connection [between the prohibition/regulation and the interests to be advanced] may be a matter of common sense in certain instances, such that a ruling on this issue based only on the pleadings may be appropriate, there may be situations in which the connection is not so apparent and does require factual development. Whether the requisite connection may be found solely on the basis of "common sense" will depend on the nature of the right, the nature of the interest

17

asserted, the nature of the prohibition, and the obviousness of its connection to the proffered interest. The showing required will vary depending on how close the court perceives the connection to be.

*Wolf v. Ashcroft*, 297 F.3d 305, 308–09 (3d Cir. 2002) (footnote omitted).

The moving defendants contend that the Department and other states have observed instances where drugs enter prisons by being soaked into the mail sent to inmates. Defs.' Br. at 10. Thus, they argue that there is a "valid, rational connection between prohibiting inmates form accessing original mail and stopping unlawful drugs from entering prison." *Id.* at 9.

This court concludes that the Department has a legitimate governmental interest in preventing contraband or narcotics from entering the state prisons. Nonetheless, the particular issue in this case is that the Department is preventing inmates from possessing the original document and Smart (or prison officials) are destroying those original documents after a certain period has passed. While the goal to prevent drugs from entering the prison is understandable, this goal is not necessarily related to an original piece of mail. Now, the moving defendants' contention goes beyond that, because they point out that the drastic change in the mail policy was required because the drugs were actually soaked into the mail coming to the inmates. Thus, allowing inmates or prison employees to physically touch the mail was actually exposing them to the drugs.

The moving defendants support these statements through three press releases, two issued by the Department (on August 29, 2018 and October 19, 2018) and one by Governor Tom Wolf (on September 5, 2018). *See* Defs.' Br., Exs. A, C, D. The court takes judicial notice of these documents (at the defendants' request) as matters of public record. *See, e.g.*, *JNL Mgmt., LLC v. Hackensack Univ. Med. Ctr.*, Civ. A. No. 18-5221 (ES) (SCM), 2019 WL 1951123, at *4 (D.N.J. May 2, 2019) ("[T]he Department of Justice's Press Release is also a matter of public record because it is a record of a government agency." (citing *Schmidt v. Skolas*, 770 F.3d 241, 250 (3d

Cir. 2014)). The August 29, 2018 and September 5, 2018 press releases provide information about the Department's staff members becoming sickened by unknown substances over a period of a few weeks. *See* Defs.' Br., Exs. A, C. The October 19, 2018 press release provides a "progress update" on the "new protocols and policies announced in September to protect staff, visitors and inmates at Pennsylvania's 25 state correctional facilities after an unprecedented number of inmate and staff exposures to unknown substances." Defs.' Br., Ex. D. In this document, the Department also importantly indicates that "[t]hose who seek to get drugs into prisons have become more creative and the new drugs, K2 or synthetic cannabinoids, are odorless, colorless and more potent than seen before, and make up 40 percent of drugs introduced into the state prison system." *Id.*

The court finds that the instant situation is one in which common sense shows a connection between the Department seeking to stop the entry of drugs into the prisons and using a system by which the original documents (which could have drugs on them) were sent for processing to another location other than the prison. As such, there is valid, rational connection between the Department's mail policy and the legitimate governmental interest put forward by the moving defendants.

Regarding the second factor, the court agrees with the moving defendants that Woodell has an alternative means to receive his non-privileged mail. Per the policy, Woodell receives a copy of the original mailing without its content being censored. *See* Defs.' Br., Ex. B, DC-ADM 803 § 1B.5 ("Facility staff will print and deliver paper copies of the incoming inmate correspondence to the inmate recipients."). While the court appreciates Woodell's desire to have an original copy of a letter or a card, *see* Pl.'s Resp. at 5 ("A Tablet is not direct correspondence, not physical connection, emotional attachment that assist [sic] adjustment to daily living during temporary incarceration; such as . . . letters, greeting cards, child drawlings [sic], and photographs not alter

[sic] by computer image, be place [sic] on database that implode your photograph view."), and the court is not downplaying the significance of the sentiment and attachment to those original documents, nevertheless, "[a]lternatives . . . need not be ideal . . .; they need only be available." *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003).

Additionally, there is nothing about the current mail policy that prevents Woodell from meaningfully corresponding with whomever he chooses, including his family. Woodell claims that his family will not send things to him (such as a new chapter of sacred teachings), but that is his family's choice and not the responsibility of the defendants. Pursuant to the current mail policy, Woodell's family can meaningfully correspond with him if they choose to do so.

As for the third factor, "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90. Here, providing Woodell what he wants, namely a return to the policy that existed prior to the Department contracting with Smart, *see* Pl.'s Resp. at 3 ("Plaintiff propose [sic] bring the mail interference to an end."), puts the Department (and its 25 prisons) back to where it was prior to the modified mail policy. As demonstrated by the October 19, 2018 press release, the effects of the changes (which included changes beyond simply changing the mail policy) on the inmate population and the staff were significant. *See* Defs.' Br., Ex. D (indicating that, *inter alia*, since policy changed (1) "[s]taff sent to the emergency room for drug exposure dropped from 48 visits in August to 8 in September[,]" (2) "[d]rug finds dropped by 46 percent to the lowest level in more than a year[,]" (3) "[p]ositive drug tests from random inmate drug testing dropped in half to the lowest level in more than a year," (4) "[b]oth inmate-on-inmate and inmate-on-staff assaults declined[,]" and (5) "[t]he number of inmate misconducts written for drug-related activity were cut in half"). It is reasonable to conclude

based on this information that returning to the prior policy could harm the inmates and staff members at the 25 state prisons.

Regarding the final factor, while a tad unclear due to his manner of writing, Woodell does not offer any other alternatives to the Department's policy in the amended complaint. As indicated earlier, in his response to the motion to dismiss, Woodell's only alternative appears to be going back to the way staff members processed mail before the new policy took effect. *See* Pl.'s Resp. at 3. As the moving defendants point out in their brief, "there are no ready alternatives that accommodate the inmate's rights at a de minimis cost to the Department . . ., nor does Woodell propose any." Defs.' Br. at 12. While the court will accept as true Woodell's assertions about drugs and contraband still entering his particular prison (it is unclear how he would know what is happening in other state prisons), there is nothing in the record to dispute that "[t]he new inmate mail policy is the most efficient and cost-effective means to deal with this new and dangerous healthy and safety problem facing the state prison system." *Id.* at 12–13. Accordingly, Woodell has not stated a plausible claim under the First Amendment regarding the Department's mail policy.

Even if Woodell had alleged a plausible claim for a constitutional violation, the court agrees with the moving defendants that they would be entitled to qualified immunity. State officials have qualified immunity from claims for monetary relief if their conduct "does not violate a clearly established statutory or constitutional right of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The doctrine is designed to 'give[] government officials breathing room to make reasonable but mistaken judgments by protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Bryan v. United States of Am.*, 913 F.3d 356, 362 (3d Cir. 2019) (quoting *City and Cty. of San Francisco, Cal. v. Sheehan*, 135 S. Ct.

1765, 1774 (2015)); *see also Pearson*, 555 U.S. at 231 ("The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." (citation and internal quotation marks omitted)). To determine whether an officer's conduct is entitled to qualified immunity, courts ask two questions, "[o]ne is whether the defendant's conduct violated a statutory or constitutional right.  The other is whether the right at issue was clearly established when the conduct took place. [Courts] have discretion to address either inquiry first." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 716 (3d Cir. 2018). During this analysis, the court views the facts as most favorable to the non-moving party and "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions."

As to the question of whether the right at issue was clearly established when the defendants' conduct took place, courts should not "define clearly established law at a high level of generality." *Id.* at 716. Courts are not required to identify "a case directly on point for a right to be clearly established, [however,] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation and internal quotation marks omitted). Lastly, as an affirmative defense, "the burden of establishing qualified immunity falls to the official claiming it as a defense."  *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)).

Here, the court agrees with the moving defendants that they did not violate clearly established law when the Department contracted with Smart to process and copy incoming non-privileged mail. Woodell does not identify, and this court cannot locate, any precedent that would have placed the moving defendants on notice that their conduct was constitutionally prohibited.

Therefore, the moving defendants are entitled to qualified immunity for Woodell's First Amendment claims under section 1983.

c.    Woodell's Eighth Amendment Claim

In the original complaint, Woodell expressly indicated that he was seeking to assert an Eighth Amendment violation. *See* Compl. at ECF p. 5. In screening the complaint, the court dismissed this cause of action for Woodell's failure to state a plausible claim for relief. *See* Mem. Op. at 10–11, Doc. No. 5. In the amended complaint, it is unclear whether Woodell is again asserting a claim under the Eighth Amendment. Nonetheless, as he at least references the Eighth Amendment in his response to the motion to dismiss and appears to raise a claim there pertaining to the loss of his property, *see* Pl.'s Resp. at 9, the court will analyze whether he has alleged a plausible claim here.

As the court previously explained, the loss of Woodell's property does not provide a basis for a claim under the Eighth Amendment. Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities"; and, second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-condition cases . . . is one of deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). While the court does not condone the intentional destruction of an inmate's property (whether it be the outright destruction or defacing of said property), the destruction of property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Wongus v. Correctional Emergency Response Team*, 389 F. Supp. 3d 294, 301–

02 (E.D. Pa. 2019) (concluding that plaintiff's allegations "that correctional facility staff violated his Eighth Amendment right to be free from cruel and unusual punishment by defacing his family photo with a swastika," while "repugnant and detrimental to the orderly administration of a prison, and should be cause for serious disciplinary action against the responsible party, if known[,]" did not "rise to the level of an Eighth Amendment violation" because he did not allege facts to show that it substantially affected his health or safety); *Payne v. Duncan*, Civ. No. 3:15-cv-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."); *Dean v. Folino*, Civ. A. No. 11-525, 2011 WL 4527352, at *2–3 (W.D. Pa. Aug. 22, 2011) (concluding that inmate's claim that "the taking and destruction of his property constituted unusual punishment and . . . violat[ed] . . . his Eighth Amendment rights" was "without merit"), *report and recommendation adopted*, 2011 WL 4502869 (W.D. Pa. Sept. 28, 2011). Therefore, Woodell has failed to state a plausible claim for relief under the Eighth Amendment pertaining to the defendants destroying or defacing property in his cell.

### d.    Woodell's Fourteenth Amendment Claims

As with his Eighth Amendment claim, Woodell does not expressly mention the Fourteenth Amendment in the amended complaint. In his response to the amended complaint, Woodell mentions that Ferguson and Wetzel violated his due process and equal protection rights. *See* Pl.'s Resp. at 2. Therefore, out of an abundance of caution, and to permit the most liberal reading of the amended complaint, the court will analyze whether Woodell has sufficiently alleged a Fourteenth Amendment violation.

To the extent that Woodell is asserting a due process claim under the Fourteenth Amendment, he is entitled to due process of law before the government can deprive him of his

"life, liberty, or property." U.S. Const. amend. XIV, § 1, cl. 3. Nonetheless, an individual may not assert a claim under section 1983 for even an intentional deprivation of the individual's property by a state employee, "if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Woodell cannot assert a plausible due process claim here because Pennsylvania law provides him with an adequate state remedy. *See Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that Pennsylvania Tort Claims Act, 42 Pa. C.S. §§ 8541–8546, provides an adequate remedy for willful deprivation of property claim). In addition, "[t]he Pennsylvania Department of Corrections . . . grievance procedure provides an adequate post-deprivation remedy," and this procedure "forecloses [Woodell's] due process claim." *Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158, 160 (3d Cir. 2014) (per curiam) (citing *Tillman v. Lebanon Cty. Corr. Fac.*, 221 F.3d 410, 422 (3d Cir. 2000)).

As for an equal protection claim, Woodell once again only possibly suggests that the defendants violated his equal protection rights by causing the loss or defacement of his property. It is possible that he is invoking the "'class of one' theory," which provides that a plaintiff "states a claim for violation of the Equal Protection Clause when he 'alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). To the extent that Woodell is asserting a "class of one" claim, he must include sufficient allegations showing that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Id.* As with the original complaint, nowhere in the amended complaint does Woodell set forth facts plausibly suggesting that the defendants treated him differently from similarly situated inmates. To the contrary, on multiple occasions he

alleges that the defendants' actions violated all state inmates' rights. Accordingly, Woodell has not set forth a plausible claim for an equal protection violation.

### e.   Woodell's Fourth Amendment Claim

In the amended complaint, Woodell appears to assert that the defendants wrongfully seized his property in violation of the Fourth Amendment. *See* Am. Compl. at ECF p. 3 ("Property was [F]ourth [A]mendment unreasonable seize [sic] and destroy [sic] of [sic] his legal materials[.]"); *see also* Pl.'s Resp. at 2 (claiming defendants violated Fourth Amendment). To the extent Woodell is basing his claim on the loss, destruction, or defacement of his property, he has not stated a plausible claim under the Fourth Amendment because "prisoners have no legitimate expectation of privacy . . . and the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson*, 468 U.S. at 530; *see Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells." (citing *Hudson*, 568 U.S. at 529)); *see also Parrish v. Corrections Emergency Response Team*, Civ. A. No. 18-CV-4871, 2019 WL 1596337, at *3 (E.D. Pa. Apr. 12, 2019) (concluding prisoner plaintiff failed to state claim for violation of Fourth Amendment where plaintiff alleged that CERT members destroyed and defaced personal property during process of transferring plaintiff from SCI–Graterford to SCI–Phoenix).

### 2.   Review Under 28 U.S.C. § 1915(e)(2)

### a.   Woodell's Official Capacity Claims Against the Moving Defendants

Although it is unclear in the amended complaint, Woodell asserts in his response to the motion to dismiss that he is asserting claims against the moving defendants in their official capacities. *See* Pl.'s Resp. at ECF p. 2. Recognizing that the court has dismissed all claims against

the moving defendants, the court also notes that Woodell could not assert a claim for damages against them in their official capacities.

In this regard, the Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment serves as "a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). It also bars a party from seeking monetary damages from a state official acting in his or her official capacity unless "waiver by the State or valid congressional override." *See Kentucky v. Graham*, 473 U.S. 159, 169 (1984) ("[T]he Eleventh Amendment bars a damages action against a State in federal court[, and t]his bar remains in effect when State officials are sued for damages in their official capacity."). This bar is in place because, even though state officials literally are persons[,] . . . a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the state itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted); *see also Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) (stating that the Eleventh Amendment "also bars a suit against state officials in their official capacity, because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury").

By enacting section 1983, Congress did not intend to abrogate Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 344-45 (1979) (stating that "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which

shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States"). Additionally, the Commonwealth of Pennsylvania has enacted 42 Pa. C.S. § 8521(b), which expressly indicates that the Commonwealth has not waived its Eleventh Amendment immunity from suit in federal courts. *See* 42 Pa. C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *see also Lavia v. Pennsylvania Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that Pennsylvania has not waived Eleventh Amendment immunity).

As the Department is a state agency of the Commonwealth of Pennsylvania, *see* 71 P.S. § 310-1, and the moving defendants are state officials, they are entitled to Eleventh Amendment immunity with regard to Woodell's damages claims against them in their official capacities. Pennsylvania has not waived their Eleventh Amendment immunity. *See* 1 Pa. C.S. § 2310 ("[I]t is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."). Therefore, the court will dismiss Woodell's claims for monetary damages against Wetzel and Ferguson in their official capacities.

b.      Woodell's Purported Fifth Amendment Claim

In his response to the motion to dismiss, Woodell states that he is asserting an unspecified Fifth Amendment claim against the moving defendants. *See* Pl.'s Resp. at 2. The Fifth Amendment to the United States Constitution states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in

> jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness
> against himself, nor be deprived of life, liberty, or property, without due process of
> law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.  At no point in the amended complaint or in his response to the motion to

dismiss does Woodell explain how the defendants' actions violated his rights under the Fifth

Amendment. To the extent that he is alleging a due process violation, "the Fifth Amendment

applies to actions of the federal government." *See B&G Constr. Co., Inc. v. Director, Office of

Workers' Compensation Prog.*, 662 F.3d 233, 246 n.14 (3d Cir. 2011) (explaining differences

between due process claims under the Fifth and Fourteenth Amendments). Since there are no

allegations (and there are no plausible allegations Woodell could assert) that any of the defendants

are federal actors, Woodell cannot maintain any claim for a Fifth Amendment violation here.[14]

### c.     Woodell's Purported Ninth Amendment Claim

As with his purported Fifth Amendment claim, Woodell asserts for the first time that he is

raising a claim for a violation of the Ninth Amendment in his response to the motion to dismiss.

*See* Pl.'s Resp. at 2. The Ninth Amendment states that "[t]he enumeration of the Constitution, of

certain rights, shall not be construed to deny or disparage others retained by the people." U.S.

Const. amend IX. While it is unclear how Woodell is seeking to apply the Ninth Amendment to

his claims, to the extent that he is attempting to do so based on the damage to his personal property,

the court "is not aware of any authority that would provide a basis for a claim under the Ninth

Amendment based on the destruction of an inmate's personal property. Indeed, courts have

generally rejected Ninth Amendment claims raised by prisoners based on complaints about prison

---

[14] It is conceivable that Woodell is seeking to bring a claim under the Takings Clause of the Fifth Amendment. This clause, applicable to the states through the Fourteenth Amendment, prevents the state from taking private property "for public use, without just compensation. U.S. Const. amend. V. To the extent that Woodell is even asserting that the defendants took his property (instead of destroying or defacing it), he does not allege or suggest that they did so "for a public purpose, so the Takings Clause is not implicated here." *Adams v. Corrs. Emergency Response Team*, Civ. A. No. 19-CV-3301, 2019 WL 4074653, at *3 n.6 (E.D. Pa. Aug. 28, 2019) (citations omitted).

conditions." *Mayo v. Corrs. Emergency Response Team*, Civ. A. No. 18-4390, 2018 WL 6524247, at *4 (E.D. Pa. Dec. 12, 2018) (citations omitted); *see also Perry v. Lackawanna Cty. Children & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009) (per curiam) ("Finally, we are not aware of any support for Perry's claim that the Ninth Amendment protects against any of the events described in his complaint. Indeed, the Ninth Amendment does not independently provide a source of individual constitutional rights." (citations omitted)).

> d.    Woodell's Possible Claims on Behalf of Other Inmates

Throughout the amended complaint, Woodell includes allegations that seemingly indicate that he is bringing claims on behalf of other inmates. *See*. Am. Compl. at ECF p. 5 ("Defendant Furguson's [sic] C.E.R.T. members who intentionally and deliberately destoryed [sic][,] discarded, damaged and stole Plaintiffs [sic] and SCI-Gra[terford] Prisoners['] legal materials, religious materials, personal property[,] art supplies and artwork and the drawing of nazi [sic] signs, burning crosses, and penises of family and friends['] photos."); *id.* ("Defendant Wetzel gave SMART the Power of Attorney to photocopy letters, photographs, to scan, and keep in their database and destroy original legal mail, privileged mail, access to the media, and other outside correspondence to violate the Plaintiffs and all Prisoners First Amendment Right of Freedom of Expression, and Thought while profitting [sic] on this process and destroy [sic] all incoming mail."). To the extent that Woodell is possibly seeking to bring claims on behalf of other inmates, he lacks standing to do so. In this regard, "a plaintiff must assert his or her own legal interests rather than those of a third party [to have standing to bring a claim." *Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2001). Accordingly, the court will dismiss any claims based on conduct not directed toward Woodell or his property.

e.      Woodell's Claims Against Smart

Woodell has never identified Smart as a defendant in the caption of the complaint or the amended complaint. When the court screened and dismissed the original complaint, the court specifically informed Woodell that, "[i]f [he] files an amended complaint, he must identify all the defendants in the caption of the amended complaint and in the body of the amended complaint." Nov. 14, 2018 Order at ¶ 6, Doc. No. 6. Instead of following the court's direction, Woodell did not include Smart in the caption, but he did refer to it as a defendant in the body of the amended complaint. *See* Am. Compl. at ¶¶ 1, 6.

Regardless, it appears that Woodell's claims against Smart overlaps those relating to the Department's mail policy and the role the moving defendants played in reviewing non-privileged prisoner mail. For the reasons stated above, Woodell's claims against Smart are also subject to dismissal for the failure to state a claim under section 1915(e)(2).

f.      Woodell's Claims Against the John Doe Defendants

Upon the court's dismissal of all of Woodell's claims against the moving defendants, the only remaining claims are against the two Doe defendants that were CERT members and two Doe defendants who were mailroom inspectors. In their brief, the defendants suggest that the court should dismiss these defendants from this action because Woodell has not served them within 90 days of the filing of the complaint (or amended complaint) in violation of Rule 4(m) of the Federal Rules of Civil Procedure. *See* Defs.' Br. at 2 n.2.

The court recognizes that some district courts in this circuit have dismissed claims against Doe defendants under Rule 4(m) for a plaintiff's failure to timely identify and serve them. *See, e.g.*, *Davison v. Kennedy*, Civ. A. No. 3:15-1373, 2016 WL 538906, at *8 (M.D. Pa. Feb. 11, 2016) (dismissing claims against Doe defendants because plaintiff failed to identify and serve them

within then-120-day period in Rule 4(m)). Here, however, as evidenced by the language of Rule 4(m), the court can only dismiss claims against a defendant for a plaintiff's failure to timely serve original process if a motion is filed or if the court first provides notice of the possibility of dismissal to the plaintiff. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—***on motion or on its own after notice to the plaintiff***—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." (emphasis added)). The moving defendants do not claim to represent the Doe defendants, so the court cannot consider the motion to dismiss to include arguments on behalf of the Doe defendants. In addition, the court has not warned Woodell about the possibility of dismissal, so the court cannot dismiss his claims against the Doe defendants under Rule 4(m) at this time.

Nonetheless, there are still two bases for dismissal. First, the court's analysis regarding Woodell's possible causes of action would apply to the Doe defendants as well. Second, "an action cannot be maintained solely against Doe defendants." *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998) (citations omitted). As there are only Doe defendants left in the case, this action is properly dismissed against them.

### 3.      Leave to Amend

A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). Here, the court finds that providing Woodell

with another opportunity to amend his complaint would be futile. Accordingly, the court will not permit him to file an amended complaint.

### 4.      Woodell's Motion to Oppose Settlement Agreement

In this motion, Woodell attempts to reassert the claim for injunctive relief that he agreed that the court could dismiss without prejudice in light of the Department's new mail policy (resulting from the settlement agreement in the Middle District). *See* Pl.'s Mot. to Oppose Settlement Agreement at 1, 2, Doc. No. 23. He appears to argue that by forwarding a copy of the settlement agreement to him, defense counsel in this case violated the settlement agreement. *Id.* at 2. Woodell then goes on to "oppose" certain "pages, paragraphs, and sentence that go outside those lines of the legal standard." *Id.*

For instance, Woodell appears to contest a section of the settlement agreement which essentially states that the plaintiffs in Judge Jones's actions will use their "best efforts to collaborate with Defendants to encourage Pa. State[] and Federal Court to agree to participate in the Department ACN System."[15] *Id.* at 3. He claims that the Department is creating a "loop hole" for it to "achieve Governmental Control." *Id.* He asserts that the plaintiffs' attorneys in those cases, by signing "the drafted scheme" demonstrates that they are "not Civil Rights Attorneys" and, instead, are seeking to participate and profit from the Department's "unlimited funds" by getting to monitor the situation. *Id.*

As for the remainder of the motion, the court cannot discern what Woodell is complaining about or the nature of his arguments. The court cannot identify which parts of the document are quotations from the settlement agreement and which parts contain his arguments. Regardless, this

---

[15] The court was not provided a copy of the settlement agreement (or whichever document Woodell is referring to), so the court cannot verify the accuracy of his quotations to any portions of the agreement. Nonetheless, it appears highly unlikely that the quoted text came directly from the settlement agreement, so it is possible that Woodell is paraphrasing it here.

court and this action is not the proper forum for Woodell to contest the quality of the settlement agreement. This motion is not the proper vehicle for the plaintiff to seek to reassert his claim for injunctive relief relating to the old mail policy because any such claim is moot in light of the change to the policy. In addition, there are no cognizable grounds in the motion to award Woodell "civil penalties" under 39 U.S.C. § 3011(a)(3). Accordingly, the court will deny this motion.

**5.     Woodell's "Motion for Leave to Expand the Record, Preliminary Injunction and/or Judicial Notice, Pennsylvania Rules of Civil Procedure, Rule 7 in General"**

In this motion, it appears that Woodell is noting that he received a non-privileged piece of correspondence from Smart two months after the postmaster stamped it. Mot. for Leave to Expand Record, Prelim. Inj. and/or Judicial Notice, Pa. R. Civ. P., Rule 7 in General at 1, Doc. No. 25. Woodell points out that this particular piece of correspondence was a card from his aunt, who lives in North Carolina. *Id.* The postmaster had stamped it on April 1, 2019, and Woodell did not receive it until May 31, 2019. *Id.*

Woodell states that he filed a grievance to inform the defendants of the incident, and he is concerned that the delay is a form of retaliation for his civil litigation. *Id.* He then "request[s] the Honorable Judge to Order to cease all distribution and forwarding all Privilege and Non-Privilege mail foe [sic] the continuos [sic] inherit [sic] defects and bad business practice in photocopying and distribution of mail." The court finds no basis to grant this relief and, as such, will deny this motion.

**6.     Woodell's Motion to Expand the Record Duty to Disclose**

It appears via this motion that Woodell seeks to have the court consider an affidavit from another inmate, Jesse D. Bond, and a form showing that the Department had a document it received on December 22, 2018 from the "Clerk of the United States District Court" and that it was asking Woodell to either direct that the Department (at its own cost) return the item to the sender or

34

destroy it. *See* Mot. for Leave to Expand the Record Duty to Disclose at ECF pp. 1–4, Doc. No. 26. In the affidavit, Mr. Bond avers that Ferguson knew and told the CERT team members to take the inmates' items and destroy them. *See id.* at ECF p. 3.

The court will deny this motion as well. There is no basis for this court to admit these documents into the record. Moreover, Mr. Bond's affidavit does not change the court's inquiry regarding the destruction of Woodell's property because the analysis presumes that any destruction of property was intentional. Moreover, the form letter does not change the court's analysis or the review of the amended complaint. Therefore, the court will deny this motion as well.

### III.   CONCLUSION

For the reasons discussed above, Woodell has not stated a plausible claim against any defendant, and the moving defendants have qualified immunity with respect to his First Amendment claims. In addition, he cannot state a claim against the moving defendants in their official capacities. The court will dismiss the amended complaint with prejudice.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.